No. 25-5840

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Oct 23, 2025
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| MADDILYN MARCUM, on behalf of herself and all others similarly situated, ) ) ) | |
| Plaintiff-Appellant, ) ) | |
| v. ) ) | |
| COMMISSIONER COOKIE CREWS, in her official capacity, et al., ) ) ) | O R D E R |
| Defendants-Appellees, ) ) | |
| and ) ) | |
| COMMONWEALTH OF KENTUCKY, ex rel. Attorney General Russell Coleman, ) ) ) | |
| Intervenor-Appellee. ) | |

Before: BOGGS, NORRIS, and MURPHY, Circuit Judges.

PER CURIAM. A recently passed Kentucky law prohibits its Department of Corrections from spending public funds on the use of "cross-sex hormones" to treat inmates with gender dysphoria. Ky. Rev. Stat. § 197.280(1)(a) (2025). Plaintiff Maddilyn Marcum—a transgender inmate in the custody of the Kentucky Department of Corrections—brought a putative class action under 42 U.S.C. § 1983 alleging that this law violates the Eighth Amendment to the United States Constitution. The district court denied Marcum's motion for a preliminary injunction. Marcum has appealed this denial. Now we consider Marcum's motion before us for an injunction pending appeal that would compel the Department of Corrections to resume its hormone therapy just for

Marcum—not for the entire class. Intervenor Commonwealth of Kentucky and Defendant Appalachian Regional Healthcare, Inc., oppose the motion. For the following reasons, we deny the motion for an injunction pending appeal.

I.

In March 2025, the Kentucky General Assembly passed Senate Bill 2, which became effective on June 27, 2025. Ky. Rev. Stat. § 197.280. This new statute provides that "public funds shall not be directly or indirectly used, granted, paid, or distributed for the purpose of providing a cosmetic service or elective procedure to an inmate in a correctional facility." *Id.* § 197.280(2), (3). The statute defines "[c]osmetic service or elective procedure" as "any procedure, treatment, or surgery to enhance or alter the appearance of any area of the head, neck, and body," and includes "[p]rescribing or administering cross-sex hormones in amounts greater than would normally be produced endogenously in a healthy person of the same age and sex." *Id.* § 197.280(1)(a). The statute does include a temporary exception to this prohibition: if a doctor concludes that "immediately terminating use" of an inmate's hormone therapy "would cause physical harm to the inmate," the doctor "may institute a period during which the inmate's use of the drug or hormone is systematically reduced and eliminated." *Id.* § 197.280(3).

In 2014, Marcum committed a murder by stabbing a man seventy-two times. *See Smith v. Commonwealth*, 2016 WL 5247712, at *1 (Ky. Sept. 22, 2016). Several years before this murder, Marcum had allegedly begun receiving hormone therapy. Marcum Decl., R.4-2, PageID 117–18. But a county jail did not provide this therapy during the time that Marcum spent in pretrial confinement. *See Marcum v. Crews*, 2025 WL 2630922, at *1 (6th Cir. Sept. 12, 2025). After sentencing, the Kentucky Department of Corrections also did not immediately provide this

therapy. *See id.* But it "reversed course" in 2016, and Marcum has continuously received hormone therapy from 2016 until 2025. *Id.*

Marcum brought this putative class-action suit in July 2025 while still receiving hormone therapy from the Department of Corrections. Compl., R.1, PageID 11. Marcum also sought a temporary restraining order and preliminary injunction against the law. *See Marcum*, 2025 WL 2630922, at *3. During the litigation, the Department of Corrections reduced and then eliminated Marcum's hormone therapy. *Id.* According to a declaration that Marcum later filed, prison health-care providers ended this therapy on August 30. Supp. Decl., R.57-1, PageID 791.

The district court refused to grant a preliminary injunction that would restore Marcum's hormone therapy. *See Marcum*, 2025 WL 2630922, at *1. The court first held that Marcum had not established a likelihood that the Kentucky law violated the Eighth Amendment. *See id.* at *5–9. It found that the record did not contain adequate evidence to suggest that doctors had ever diagnosed Marcum with gender dysphoria even if this condition, in the abstract, could qualify as a serious medical need. *See id.* at *5–6. It next found that the expert medical evidence conflicted over whether hormone therapy qualified as the only proper treatment for gender dysphoria. *See id.* at *7–9. This finding barred any claim that the prison officials had acted with deliberate indifference. *See id.* at *7. The court also held that Marcum had failed to establish an irreparable injury. *See id.* *9–10. Although Marcum testified to experiencing significant side effects when taken off hormone therapy while in pretrial incarceration, the court found that "the record does not verify that the Plaintiff suffered any of these symptoms." *Id.* at *10. And while Marcum had been immediately taken off hormone therapy in the past, the Department of Corrections in this case followed a gradual approach to end this therapy. *Id.* The court lastly held that the public interest

justified a denial of an injunction because of the federalism and comity concerns with a federal court's judicial micromanagement of a State's prison administration. *See id.* at *10.

## II.

Marcum has appealed and now seeks an injunction pending appeal. We may "grant an injunction pending appeal to prevent irreparable harm to the party requesting such relief during the pendency of the appeal." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 572 (6th Cir. 2002); *see* Fed. R. App. P. 8(a)(2). We consider four factors when deciding whether to grant such an injunction: (1) whether the movant is likely to succeed on the merits; (2) whether the movant will suffer irreparable harm absent an injunction; (3) whether the injunction will injure other parties; and (4) whether the public interest favors an injunction. *See Monclova Christian Acad. v. Toledo-Lucas Cnty. Health Dep't*, 984 F.3d 477, 479 (6th Cir. 2020) (order).

*Likelihood of Success*. In constitutional cases, the likelihood-of-success factor is often dispositive. *See L.W. ex rel. Williams v. Skrmetti*, 73 F.4th 408, 414 (6th Cir. 2023); *Vitolo v. Guzman*, 999 F.3d 353, 360 (6th Cir. 2021). If challengers show such a likelihood, they typically can establish that they will suffer an irreparable injury from the violation of their constitutional rights. *See Vitolo*, 999 F.3d at 360. But if a State shows such a likelihood, it typically can establish that it would suffer an irreparable injury from the "inability to enforce the will of its legislature." *L.W.*, 73 F.4th at 421. We review this likelihood-of-success factor de novo. *See id.*

At this early stage of the appeal, we see no likely legal error in the district court's careful reasoning. The Eighth Amendment—which regulates the States through the Fourteenth Amendment—"protects an individual from 'cruel and unusual punishments.'" *Murray v. Dep't of Corrs.*, 29 F.4th 779, 786 (6th Cir. 2022) (quoting U.S. Const. amend. VIII). The Supreme Court has held that prison officials impose cruel and unusual punishments when they act with "deliberate

indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This type of deliberate-indifference claim has both objective and subjective elements. *Murray*, 29 F.4th at 786. Marcum's current briefing has not shown a likelihood of success under either element.

We start with the objective element. This element requires prisoners to establish that they have "serious medical needs." *Phillips v. Tangilag*, 14 F.4th 524, 532 (6th Cir. 2021). At this stage, we may assume that gender dysphoria qualifies as such a medical need and that Marcum suffers from this condition (despite the district court's contrary finding of fact). Yet when prison health-care providers offer "some care and prisoners challenge their treatment choices as inadequate," prisoners must show more to establish the objective element. *Id.* at 534–35. The Eighth Amendment does not codify the objective standards of care that would govern medical-malpractice claims in a state tort suit. *See id.* at 535. Rather, it bars only that type of care that one could objectively describe as "cruel and unusual." That is, it prohibits only "grossly or woefully inadequate care"—the type of care that "shock[s] the conscience" or is "intolerable to fundamental fairness." *Id.* (quoting *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018)).

This demanding standard likely applies here. When reviewing the limited record, the district court found as a fact that Marcum continues to receive other care for gender dysphoria, including cognitive behavioral therapy. *See Marcum*, 2025 WL 2630922, at *6. Marcum thus challenges the Department of Corrections' "treatment choices" (cognitive therapy) and seeks different treatment (hormone therapy). *Phillips*, 14 F.4th at 535. But Marcum has not shown at this stage that the existing treatment options are so inadequate as to shock the conscience. *Cf. Clark v. Valletta*, __ F.4th __, 2025 WL 2825324, at *9 (2d Cir. Oct. 6, 2025). The parties' competing medical experts prove this point. Marcum's expert calls hormone replacement therapy "medically necessary[.]" Karasic Decl., R.4-1, PageID 81–82. Kentucky's expert, by contrast,

claims that this hormone therapy "lacks scientific foundation" and is not "healthy" for inmates. Laidlaw Rep., R.20-1, PageID 251–52. And he "made fact-specific inquiries" into Marcum's medical history, while Marcum's expert did not. *Marcum*, 2025 WL 2630922, at *8. Regardless, the district court found both witnesses to be "credible dueling experts" because each one has significant experience researching gender dysphoria. *Id.* at *9; *cf. Gibson v. Collier*, 920 F.3d 212, 220 (5th Cir. 2019). The existing record thus suggests that the medical community has not reached a consensus on the role hormone therapy should play in treating gender dysphoria. And if Marcum could not even establish that this therapy qualifies as the standard of care for purposes of a medical-malpractice claim, Kentucky's refusal to provide the therapy cannot satisfy the more demanding Eighth Amendment test. *See Phillips*, 14 F.4th at 535.

Even if we assume that the objective component of the deliberate-indifference test has been met, Marcum likely will fall short in establishing the subjective element for similar reasons. That element requires prisoners to show that the prison officials knew of and consciously disregarded the prisoners' serious medical needs. *See id.* Other circuits have found that "where . . . there is robust and substantial good faith disagreement dividing respected members of the expert medical community" about the proper care, prisoners cannot show that prison officials acted with this deliberate indifference. *Gibson*, 920 F.3d at 220; *see also Kosilek v. Spencer*, 774 F.3d 63, 91–92 (1st Cir. 2014) (en banc); *cf. Clark*, 2025 WL 2825324, at *12–13. Like the record in *Gibson*, the record in this case contains this type of medical disagreement. And as the district court also explained, this medical disagreement distinguishes other cases that have found Eighth Amendment violations for the care that prison officials provided to transgender inmates. *See Edmo v. Corizon, Inc.*, 935 F.3d 757, 795 (9th Cir. 2019) (per curiam); *Fields v. Smith*, 653 F.3d 550, 556 (7th Cir. 2011); *see also Marcum*, 2025 WL 2630922, at *6.

Marcum does not dispute that the record—as it currently stands at this preliminary stage—contains conflicting medical evidence over whether hormone therapy represents proper treatment for gender dysphoria. But Marcum says that this medical debate is beside the point because Kentucky's legislature did not pass its law to protect prisoners "from purported risks of unproven medical technology." Reply Br. 10. Rather, it allegedly passed the law as "a policy judgment based on politics." *Id.* But Marcum cites no case from the Supreme Court or from this court that makes the intent behind a law relevant to this deliberate-indifference issue. If medical disagreement exists over whether a prisoner's preferred treatment represents necessary care, why should the motivation behind a legislative restriction of that care matter? At least at this preliminary stage of the appeal, Marcum has not provided an adequate answer. So Marcum has not shown a likelihood of success on the merits of this Eighth Amendment claim.

*Remaining Factors*. As in other constitutional cases, the likelihood-of-success factor is all but dispositive here. *See L.W.*, 73 F.4th at 414; *Daunt v. Benson*, 956 F.3d 396, 421–22 (6th Cir. 2020). To start, the district court found that Marcum did not establish an irreparable injury based on its fact-bound review of the record. *See Marcum*, 2025 WL 2630922, at *10. We likely must treat this conclusion as a factual finding that triggers clear-error review. *See Daunt*, 956 F.3d at 406. And we see no such error. To be sure, the district court recognized that Marcum claimed to have suffered significant injuries (including suicidal ideations and physical withdrawals) the last time that Kentucky authorities stopped hormone therapy during pretrial incarceration. But no contemporaneous medical evidence from that time undergirds this claim. *See Marcum*, 2025 WL 2630922, at *9–10. At that time, the authorities also forced Marcum to *immediately* end hormone therapy. This time, by contrast, the law permitted a "health care provider" to reduce hormone therapy gradually if the provider believed that immediate termination "would cause physical harm

to the inmate." Ky. Rev. Stat. § 197.280(3). Kentucky's lawyers suggested that this tapering provision could allow continued treatment for *years* if health-care providers found such a gradual reduction necessary for an inmate's physical health. *See Marcum*, 2025 WL 2630922, at *2 n.1. Yet the Department of Corrections' providers did not continue treatment past August 30.

Under current law, by contrast, Kentucky would suffer an irreparable injury from an injunction. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)); *see L.W.*, 73 F.4th at 421. And the public interest also weighs in Kentucky's favor because the public is served by a "'a correct application' of the law" and by implementing the "will" of Kentucky's people. *Priorities USA v. Nessel*, 860 F. App'x 419, 423 (6th Cir. 2021) (quoting *Coal. to Def. Affirmative Action v. Granholm*, 473 F.3d 237, 252 (6th Cir. 2006)).

On the current briefing, Marcum has not made the showing necessary to justify an immediate injunction. The motion for an injunction pending appeal is thus **DENIED**.

ENTERED BY ORDER OF THE COURT

_Kelly L. Stephens_
Kelly L. Stephens, Clerk